UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARQUIS JAVET MCINTYRE #559204     CIVIL ACTION NO. 20-cv-1513

VERSUS     JUDGE ELIZABETH E. FOOTE

CLAIBORNE PARISH DETENTION CENTER, ET AL     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Marquis Javet McIntyre ("Plaintiff") is a self-represented convicted DOC prisoner who was previously housed at the Claiborne Parish Detention Center ("CPDC"). He filed this civil rights action against Lt. Bennie Holyfield and the detention center based on an allegation that Holyfield wrongfully sprayed Plaintiff with chemical spray three times and struck Plaintiff on the head with the can of spray. Plaintiff requests $500,000 in damages.

Before the court is a Motion for Summary Judgment (Doc. 23) filed by Lt. Holyfield that argues (1) Plaintiff failed to exhaust his administrative remedies before filing this suit, (2) Holyfield did not violate any constitutional right of Plaintiff, and (3) Holyfield is entitled to qualified immunity. For the reasons that follow, it is recommended that the motion be granted and this civil action be dismissed.

### The Exhaustion Defense

**A. The Exhaustion Requirement**

Plaintiff's complaint asserts claims based on 42 U.S.C. § 1983. Holyfield argues that the complaint is subject to dismissal because Plaintiff did not exhaust his

administrative remedies before he filed suit. The defense is based on a provision in 42 U.S.C. § 1997e(a) enacted by the Prison Litigation Reform Act ("PLRA"). It provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The statute is interpreted broadly to apply to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Porter v. Nussle, 122 S.Ct. 983 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 126 S.Ct. 2378, 2386 (2006). "[T]he PLRA pre-filing exhaustion requirement is mandatory and non-discretionary." Gonzalez v. Seal, 702 F.3d 785, 787 (5th Cir. 2012) (per curiam).

**B. Summary Judgment Burden**

"Since exhaustion is an affirmative defense, the burden is on [Defendants] to demonstrate that [Plaintiff] failed to exhaust available administrative remedies." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). A defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Id.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict

for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**C. The Grievance Process**

Defendant Holyfield submits the affidavit (Doc. 23-1) of Steve Risner, who attached to it a copy of the ARP process in effect at CPDC in August 2020, when Plaintiff's claim arose, through today. The plan specifically sets forth guidelines for DOC offenders. It warns that "timely compliance by the offender with each step of the filing and appeal procedure is required." And it warns in bold print that if an offender does not follow "each step of the procedure in a timely manner he may be prohibited from later bringing the grievance to court."

The plan sets forth a process that is completed from beginning to end within 90 days unless an extension is granted. Step one is for an offender to complete an offender grievance form that consists of (a) a standard Offender Grievance form or (b) any form of written communication which contains the phrase: "This is a grievance under the Administrative Remedy Procedure." When such grievances are accepted for processing, the warden assigns the grievance to a staff member who issues a step one response. If the

offender is not satisfied with that response, he may request review by the warden at step two and, finally, the sheriff at step three. Each step allows the respondent a limited time to respond (15 days at step one; 25 days at step two; 40 days at step 3).

The plan provides for the prisoner to proceed to the next step if he does not receive a timely response. The plan states: "If an extension has not been granted and the offender has not received a response in the set time frame, the offender can move on to the next step in the ARP." This is of particular importance in this case.

The plan appears to be inconsistent regarding where to file a grievance. The third paragraph states in bold: "All A.R.P.s must be dropped in a drop box (labeled A.R.P.s) next to the dinning (sic) hall door, were (sic) they will be picked up and answered in a timely manor (sic)." But the step one instructions state: "The Offender Grievance Form should be given to a correctional Officer, so that it can be forwarded to the Warden's Office." The plan also advises that it is the responsibility of the offender to retain a copy of his grievance.

### D. Allegations and Evidence of ARP Filings

Plaintiff filed his complaint on a form that asked if he had filed an administrative grievance and what specific steps he took. Plaintiff wrote: "I have filed grievances at all levels and have not received any response." He attached to his complaint a completed CPDC grievance form dated September 17, 2020 that complained of the alleged application of chemical spray and excessive force on August 18, 2020. Plaintiff wrote that he had exhausted every possible means to resolve the situation, but to no avail. That is consistent with his allegation in the body of his complaint that, after the incident, he asked multiple

times to speak to the warden in an effort to discuss the situation. He said he encountered her one day in booking and told her that he wanted to speak with her about the situation, but she responded by walking away without a word.

Assistant Warden Steve Risner testifies in his affidavit that, as part of his job, he maintains inmate records at CPDC. Risner states that he diligently searched the records of Plaintiff and the records of CPDC but "there is no record of Plaintiff Marquis McIntyre filing an administrative grievance pursuant to the ARP Procedure regarding the August 18, 2020 incident at issue in Plaintiff's Complaint in this matter at any of the three steps in the ARP Procedure."

Plaintiff has filed two submissions in response to the motion. Neither submission was sworn before a notary or made under penalty of perjury in compliance with 28 U.S.C. § 1746. Plaintiff wrote in the first submission (Doc. 25) that he "wrote Warden Williams multiple request and complaints regarding the incident" of August 18, to no avail. He then encountered the warden on August 25, 2020, but she walked off. Plaintiff wrote that this was "my attempt at my first step in the grievance process." Plaintiff added that he made "multiple attempts at writing Warden Williams" on kiosks in the detention center and then "filed my ARP on September 17, 2020" (the date on the ARP attached to the complaint), which he "sent under Asst. Warden Risner door during chow." After no response, he filed his judicial complaint on November 25, 2020. Plaintiff wrote that step three of the grievance process could not be taken because he never received a response to his ARP or other complaints.

Plaintiff wrote in his second submission (Doc. 27) that CPDC dorms are equipped with a kiosk machine and 24 handheld tablets that allow inmates the option to write a grievance or submit other complaints electronically. He alleged that between August 23 and September 17, 2020 he "filed multiple submits under grievance/complaint as well as note to warden with no response." Plaintiff states that, in addition to his kiosk/tablet submissions, he "filed a hand written grievance on August 26, 2020" just eight days after the incident. This grievance was allegedly "dropped in the box outside the chow hall" and, after 22 days with no response, Plaintiff "then wrote an ARP on September 17, 2020 which was slid under a secure door titled 'Warden Risner Office.' " Plaintiff waited until November 25, 2020 to file his suit. Plaintiff said that completing step three was not possible due to the administration's uncooperativeness.

**E. Analysis**

A similar situation was addressed in <u>Wilson v. Epps</u>, 776 F.3d 296 (5th Cir. 2015), where the prisoner filed ten formal grievances but alleged that he received no response within the time allowed for the administration to do so. The three-step plan at issue was similar to the one in this case. It provided that "expiration of response time limits without receipt of a written response shall entitled the offender to move on to the next step in the process." The CPDC plan includes a similar provision that if an offender "has not received a response in the set time frame, the offender can move on to the next step in the ARP."

The Fifth Circuit began by noting that it "has taken a 'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the

Page 6 of 15

prison's grievance procedures, but instead must 'exhaust available remedies *properly*.'" Wilson, 776 F.3d at 299-300, quoting Dillon, 596 F.3d at 268 (emphasis added).

The Court observed that under some circumstances a prison's failure to respond to a grievance can result in the prisoner's administrative remedies being deemed exhausted. But the obligation to pursue the grievance remedy to conclusion "does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process." Id. at 301. "Instead, the prison's failure to timely respond simply entitled the prisoner to move on to the next step in the process." Id. Thus, it is only if the prison fails to respond at the *last* step of the process that the prisoner becomes entitled to sue, because then there is no next step other than a lawsuit. The Court stated that this was true both under the terms of the plan before it "and as a matter of the law of this circuit." Id.

The Court held that Wilson could not maintain a suit founded on any claim that he presented to the prison in only a step-one ARP, "irrespective of whether the prison responded within the time allotted for rendering step-one responses." Id. The prison's failure to respond would result in exhaustion for Wilson only if Wilson went on to file both a step-two and a step-three appeal, thus pursuing the grievance remedy to conclusion, and the prison did not make a timely response at that point. Id. The Fifth Circuit also applied this holding in Trigg v. Wiginton, 600 Fed. Appx. 295 (5th Cir. 2015).

Defendant presents evidence that suggests Plaintiff never filed any grievance. Plaintiff alleges that he filed more than one potential grievance at the first level, and he submits a copy of one step-one grievance. Plaintiff alleges that he never received a step-

one response, but he does not allege that he ever took advantage of the plan's provision that he could move on to the next step in the process if he did not receive a timely response. Given the strict approach established by Wilson, Plaintiff did not exhaust his available remedies properly because he never proceeded past the first step. Plaintiff did not exhaust his administrative remedies with respect to any claim asserted in his complaint, so the appropriate result is dismissal without prejudice. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019) ("Failure to exhaust … warrants dismissal without prejudice …).

**Excessive Force**

### A. Plaintiff's Allegations

Plaintiff alleges that on August 18, 2020, Warden Williams, Lt. Holyfield, and five other officers entered his dorm. The warden told everyone to "rack up" and take down all hanging items. As she was talking, she ordered her staff to take all of the tablets from the inmates. Plaintiff alleges that he then stopped Lt. Holyfield as he walked past and told him that it was unfair for all inmates in the dorm to be punished for the actions of a few. Plaintiff stated that he personally had followed all of the warden's orders since she entered the dorm.

Plaintiff alleges that, as he was talking to Holyfield, another officer ordered inmates to shut up and turn in the tablets. Plaintiff stated, "This shit is crazy." That led to a confrontation with another officer, and Plaintiff was ordered to go into the hallway. Plaintiff alleges that the officers were cursing the inmates, and he pleaded his case to the warden that he did not do anything. Plaintiff alleges that he walked calmly into the hallway, where Lt. Holyfield told him to step to the right of the door.

Plaintiff alleges that he complied with Holyfield's order. Holyfield then, for no apparent reason, sprayed Plaintiff with a "riot can of Fox then immediately struck across my head with the same riot can of Fox." Plaintiff alleges that he asked Holyfield, "Are y'all serious?" Holyfield answered by spraying Plaintiff directly in his mouth, pushed him into the foyer at the end of the hall, and sprayed him again." Plaintiff alleges that as he was vomiting the spray and trying to catch his breath, he saw another inmate receive identical treatment. Both inmates were then escorted to another housing area and told to take a shower. Plaintiff alleges that other inmates in the area were being quarantined for Covid-19. He complains that he later began to vomit orange-colored substance that he believes was the chemical spray he swallowed, and he never received any medical treatment for alleged burns on his face and nasal cavity, bleeding, or stomach cramps.

**B. Holyfield's Affidavit**

Lt. Holyfield testifies in an affidavit that, on the day before the incident, there was a knife fight between two inmates. Warden Williams ordered a shakedown or search of all dorms in the facility for contraband, including knives. Holyfield participated in the searches, which required inmates in a dorm to "rack up" or sit on top of their bunks so that the dorm and the inmate's possessions could be searched.

Holyfield testifies that Plaintiff was serving a 17-year sentence for multiple violent crimes, including attempted first-degree murder, armed robbery, aggravated battery, and battery of a correctional officer. As Holyfield entered dorm A-7, he saw Plaintiff and another inmate arguing loudly with Warden Williams and Lt. Glass (both females). Plaintiff and the other inmate were throwing up their hands and making gestures as they

yelled at the warden and Lt. Glass. Holyfield heard the warden and Glass order the inmates to rack up, but the inmates questioned why they had to do so. "They stated that they were going to buck the system and threatened to incite a riot." The two inmates used profanity while yelling and gesturing at the officers. Holyfield states that use of profanity and noncompliance with an officer's command are violations of CPDC rules.

    Holyfield testifies that the two inmates were only two or three feet away from the warden and Lt. Glass, and he believes the inmates were a risk to the physical safety of the officers and their behavior could prompt other inmates to resist commands. To prevent the situation from escalating further, Holyfield stepped between the two officers and the two inmates, and he ordered the inmates to go out in the hallway and stop their loud arguments and gestures.

    Holyfield testifies that he escorted Plaintiff to the hallway, and Plaintiff continued to use profanity, gesture, and aggressively question Holyfield. Holyfield states that he warned Plaintiff "multiple times that he needed to calm down, and that if he did not calm down, I would have to use pepper spray on him to gain compliance." Holyfield said that he was concerned that if Plaintiff did not calm down and become compliant, he would attack Holyfield or someone else. He was also concerned that using another form of force, such as his fist or a baton, would bring him into closer proximity to Plaintiff and would pose a threat to his safety.

    Holyfield testifies that, after multiple warnings were unsuccessful, he "used a one-second burst of pepper spray on [Plaintiff] while I was standing approximately 2.5 to 3 feet away from [Plaintiff]." Plaintiff turned his head and face away from the burst of spray,

which resulted in only a portion of the spray getting into his mouth, nose, and eyes. Holyfield specifically denies that he ever struck Plaintiff with the can or anything else. He then immediately took Plaintiff to dorm A-5, which was about 25 feet away and contained individual cells for inmates who are on administrative segregation. The dorm also had a shower, and Plaintiff was immediately allowed to shower to wash the pepper spray off. He was also given a new change of clothes. Plaintiff was then kept in an individual cell in administrative segregation based on his violations of the rules. Holyfield testifies that Plaintiff never asked for medical care after the incident and, in Holyfield's estimation, Plaintiff did not need medical care. The shower allowed him to wash off the pepper spray.

### C. Excessive Force and Chemical Spray

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).

The focus of the standard is on the corrections official's subjective intent to punish, and his intent is determined by reference to certain well established Hudson factors: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible official, and (5) any efforts made to temper the severity of a forceful response.

Cowart v. Erwin, 837 F.3d 444, 453 (5th Cir. 2016). The Hudson standard applies with equal force to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004). Each case is judged on its own facts, after considering the non-exclusive factors listed above. Baldwin, 137 F.3d at 839.

### D. Analysis

Plaintiff's response to the motion for summary judgment repeats his allegations regarding the use of force, but it is not supported by an affidavit or unsworn declaration in compliance with 28 U.S.C. § 1746. Plaintiff did submit an "affidavit" from inmate Adrian Nelson, but it is not sworn before a notary or made under penalty of perjury. Nelson backs Plaintiff's allegation that, after Plaintiff walked into the hall, Holyfield "sprayed him before he could even ask what he was being pulled out for."

Defendant's facts govern because he supported them with competent summary judgment evidence, and Plaintiff relies on nothing but his unsworn complaint, unsworn memoranda, and an unsworn written statement from a witness. Defendant met his initial summary judgment burden, but Plaintiff did not respond with any competent evidence that would create a genuine dispute of a material fact. "A party opposing a properly supported summary judgment motion may not rest on mere allegations contained in the pleadings to demonstrate a genuine issue of material fact." Frazier v. Keith, 707 Fed. Appx. 823, 825 (5th Cir. 2018) (affirming summary judgment for prison officials). "Even pro se litigants may not oppose summary judgment motions with unsworn materials." Turner v.

Baird, 707 Fed. Appx 290, 291 (5th Cir. 2017), citing Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980).

The uncontested facts presented by Holyfield's affidavit govern for summary judgment purposes. They demonstrate that, upon consideration of the Hudson factors, Holyfield is entitled to summary judgment. Holyfield testified that Plaintiff suffered only a short burst of spray to his turned face, and he was immediately allowed to shower and given clean clothes. Thus, the extent of the injury suffered is not great. Holyfield presents a case where there was a need for the application of force to keep plaintiff from continuing in an agitated state, where he might attack Holyfield or others. Efforts to talk to Plaintiff to calm him down and remove him from the main room of the dorm did not accomplish the goal. After only a short burst of spray, Plaintiff apparently complied, and no further force was employed. Under this scenario, there is no genuine dispute of material fact to prevent summary judgment for Holyfield on the excessive force claim.

**Claiborne Parish Detention Center**

Plaintiff's complaint named as a defendant the Claiborne Parish Detention Center. Plaintiff has not survived summary judgment on any underlying claim that would permit relief against any party, but the CPDC is also entitled to dismissal for another reason. "It is well established that a detention center is not a legal entity capable of being sued." Robertson v. Detention Center Claiborne Parish, 2009 WL 3241561 (W.D. La. 2009). A detention center is merely a building and grounds, not a person, corporation, or other entity who might properly be sued. Hicks v. Page, 2010 WL 2243584 (W.D. La. 2010). Accordingly, all claims against the CPDC should be dismissed.

**Conclusion**

The undersigned has recommended that the motion for summary judgment be granted for failure to exhaust administrative remedies prior to filing suit. Dismissal on those grounds would be without prejudice, although the limitations period would likely make it effectively with prejudice. It has also been recommended that summary judgment be granted on the merits of the excessive force claim, and that dismissal would be with prejudice. The recommendation, therefore, is that all claims be dismissed with prejudice.

Accordingly,

It is recommended that defendant Bennie Holyfield's Motion for Summary Judgment (Doc. 23) be granted and that all claims against Holyfield and the Claiborne Parish Detention Center be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of November, 2021.

Mark L. Hornsby
U.S. Magistrate Judge